UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANN-MARIE REARDON, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 09-11900-JLT |
| | * | |
| MASSACHUSETTS GENERAL | * | |
| HOSPITAL, et al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

March 19, 2012

TAURO, J.

I.      Introduction

Plaintiff Ann-Marie Reardon ("Reardon") brings this suit against Defendants

Massachusetts General Hospital ("MGH"), Jo-Anne Shepard ("Shepard"), and Maureen Seluta

("Seluta") for violations of the Fair Labor Standards Act ("FLSA"), violations of the Americans

with Disabilities Act ("ADA"), violations of Mass. Gen. Laws ch. 151B, §4(16), and violations of

the Family and Medical Leave Act ("FMLA").  Currently at issue are the Motion for Summary

Judgment of Defendant Jo-Anne Shepard [#27] and The Motion for Summary Judgment of

Defendants Massachusetts General Hospital and Maureen Seluta [#30].  For the following

reasons, the Motion for Summary Judgment of Defendant Jo-Anne Shepard is ALLOWED, and

The Motion for Summary Judgment of Defendants Massachusetts General Hospital and Maureen

Seluta is ALLOWED in part and DENIED in part.

II.     Background

     A.     Factual Background

In September 2000, Plaintiff Ann-Marie Reardon ("Reardon") was hired by Defendant

Massachusetts General Hospital ("MGH") to work as an administrative assistant in MGH's

Thoracic Radiology group of the Radiology Department ("Department").[1]  Defendant Jo-Anne

Shepard ("Shepard") was director of Thoracic Imaging and Intervention at MGH, and was

Reardon's supervisor.[2]  Defendant Maureen Seluta ("Seluta") served as the Department's

operations manager, and Reardon would report her time sheets to her.[3]  Upon the commencement

of her employment, Reardon signed a confidentiality agreement stating that she would not

"willingly inform another person of [her] computer password" and that "violation of this

agreement may result in corrective action, up to and including termination of employment . . . ."[4]

     Reardon was paid an hourly wage, and was eligible for overtime pay under the Fair Labor

Standards Act ("FLSA") 29 U.S.C. § 207.  Reardon alleges that when she worked more than

forty hours a week Seluta told her "[t]o just put 40 hours on [her] time sheet; that's what [Seluta]

was paying [her]."[5]  Reardon complained to Seluta and Shepard about the fact that she was not

---

[1] Dep. Ann-Marie Reardon, Defs.' Ex. 29-A, 11:2-6 [#29–2].

[2] March 15, 2012 Dep. Jo-Anne O. Shepard, Defs.' Ex. 29-D, 15:8-14 [#29-5]; Dep. Ann-Marie Reardon, Pl.'s Ex. 37-7, 12:8-9 [#37-1].

[3] Dep. Maureen Seluta, Defs' Ex. 29-B, 10:18-21, 13:8-9 [#29-3].

[4] Confidentiality Agreement, Pl.'s Ex. 37-1 [#37-1].

[5] Dep. Reardon, Pl.'s Ex. 37-7, 51:21-22.

being paid overtime.[6]  On one occasion, Seluta told Reardon "to stop nickel and diming her."[7]

While working at MGH, Reardon asked for and received leave under the Family and Medical Leave Act ("FMLA") on seven occasions, including intermittent leave to care for her ill husband and leave to care for her own health conditions.[8]  When Reardon used FMLA leave, Seluta and Shepard expressed to her their displeasure with her taking time off.[9]  Specifically, they asked if anyone else could take Reardon's husband to his medical appointments for her.[10]  Shepard would tell Reardon, on occassion,  that "it was always the wrong time for [her] to be out of the office."[11]  According to Reardon, Shepard gave Reardon additional work when she returned to the office.[12]  In April 2007, Reardon's primary care physician recommended that Reardon take six weeks off to care for her husband and to deal with her own stress.[13]  Upon hearing that Reardon would take this time, Seluta, allegedly, told her to "get out."[14]  The last time Reardon received intermittent leave under the FMLA was on May 15, 2009.[15]  This approval

---

[6]  Dep. Reardon, Pl.'s Ex. 37-7, 60:1-17.

[7]  Dep. Reardon, Pl.'s Ex. 37-7, 52:12-14.

[8]  Dep. Reardon, Pl.'s Ex. 37-7, 82:2-10, 83:23-84:3, 88:9-89-:12.

[9]  Dep. Reardon, Pl.'s Ex. 37-7, 84:12-85:10.

[10]  Dep. Reardon, Pl.'s Ex. 37-7, 84:15-85:5.

[11]  Dep. Reardon, Pl.'s Ex. 37-7, 87:8-9.

[12]  Dep. Reardon, Pl.'s Ex. 37-7, 86:14-16.

[13]  Dep. Reardon, Pl.'s Ex. 37-7, 93:3-10.

[14]  Dep. Reardon, Pl.'s Ex. 37-7, 92:1-17.

[15]  Pl.'s Ex. 37-26 [#37-4].

extended her intermittent leave that began on February 4, 2009, and originally ended on May 4, 2009, to August 4, 2009.[16]

Beginning in 2004, Reardon began to experience panic attacks at work that ranged in severity.[17]  Reardon alleges that the panic attacks constitute a disability.[18]  On December 13, 2007, Reardon collapsed while at work and was admitted into the hospital for three days.[19]  On January 11, 2008, Seluta called Reardon into her office and gave her an oral warning for not calling in to work on December 13 and 14, when she was in the hospital.[20]

On March 5, 2009, Seluta and Martha Munhall, a senior human resources generalist at MGH,[21] met with Reardon to discuss Shephard's concerns about Reardon's attendance and timekeeping.[22]  Seluta and Munhall told Reardon that from then on she would have to e-mail Seluta and Seluta's assistant, Debra Ricciardelli, at the beginning and end of each of her work shifts.[23] Ana Forim, an administrative assistant in the Department who Reardon supervised, was

---

[16] Pl.'s Ex. 37-26 [#37-4].

[17] Dep. Reardon, Pl.'s Ex. 37-7, 99:10-12, 100: 18-20, 102:11-12.

[18] Am. Compl. ¶ 42 [#20].  For the purposes of summary judgment, Defendants do not dispute this assertion.

[19] Dep. Reardon, Pl.'s Ex. 37-7, 102:24-103:11, 108:15-109:3.

[20] Dep. Reardon, Pl.'s Ex. 37-7, 108:5-17.

[21] Dep. Martha Griffin Munhall, Defs.' Ex. 29-G, 10:4-5, 15-21 [#29-8].

[22] E-mail, Pl.'s Ex. 37-8 [#37-2].

[23] Dep. Reardon, Pl.'s Ex. 37-7, 65:5-9;  E-mail, Pl.'s Ex. 37-8; Dep. Seluta, Defs' Ex. 29-B, 50:5-12.

also required to e-mail Seluta and Ricciardelli.[24]

On Thursday, May 28, 2009, Seluta issued Reardon an oral warning for failing to e-mail her consistently.[25]   Reardon explained to Seluta that she had not sent the e-mails because Forim had told Reardon that they no longer had to and that Forim had not done so for a month.[26]  After the meeting, Reardon was upset.[27]

Dr. Victorine Muse, a radiologist at MGH, saw Reardon multiple times on May 28, and she noticed that Reardon was upset and teary eyed.[28]  Muse suggested to Reardon that she go home early, but Reardon told her that she would get in trouble if she did so.[29]   Reardon told Muse that she had to e-mail Seluta and Ricciardelli at 4:00 p.m., the end of her workday.[30]  After discussing it, Reardon agreed to leave early instead of at 4:00 p.m.[31]  Muse told Reardon that she would cover for her.[32]  Reardon gave Muse her computer username and password so that Muse could e-mail Seluta and Ricciardelli from Reardon's e-mail account at 4:00 p.m., and Reardon left

---

[24] Dep. Seluta, Defs.' Ex. 29-B, 50:13-19; Dep. Ana Lucia Forim, Defs.' Ex. 29-F, 16:2-5, 20:11-13 [#29-7].

[25] Dep. Reardon, Pl.'s Ex. 37-7, 124:7-21; Memo, Pl.'s Ex. 37-28 [#37-4].

[26] Dep. Reardon, Pl.'s Ex. 37-7, 125:14-19.

[27] Dep. Reardon, Pl.'s Ex. 37-7, 129:15-20.

[28] Dep. Victorine Vining Muse, Pl.'s Ex. 37-32, 28:9-29:5 [#37-4].

[29] Dep. Reardon, Pl.'s Ex. 37-7, 129:21-130:2.

[30] Dep. Reardon, Pl.'s Ex. 37-7, 131:4.

[31] Dep. Reardon, Pl.'s Ex. 37-7, 129:11, 130:2-3.

[32] Dep. Reardon, Pl.'s Ex. 37-7, 130:24-131:2 [#37-1].

work around 3:15 p.m.[33]  At 4:00 p.m., Forim paged Muse to remind her to send the e-mail from

Reardon's computer, which Muse did.[34]  Later that day, Forim told Seluta about the incident

because she was nervous she had done something wrong.[35]

On Monday, June 1, 2009, Seluta and Mary Theresa Shore, director of MGH imaging

clinical operations, met with Reardon.[36]  They asked her whether she provided Muse with her

computer username and password and left work early on May 28.[37]  Reardon confirmed that she

had.[38]  They told Reardon to change her password and to go home for the rest of the day, which

Reardon did.[39]

As instructed, Reardon returned to work on June 2.[40]  That morning, Denise Palumbo, the

Department's executive director, e-mailed Munhall, Shore, and Seluta, and told them to "[l]eave

Ann Marie [Reardon] out on investigatory leave."[41]  Later that morning, Seluta and Shore

provided Reardon with a notice of termination and informed her that her employment was

---

[33] Dep. Reardon, Pl.'s Ex. 37-7, 131:7-12; Dep. Muse, Pl.'s Ex. 37-32, 33:22-34:4.

[34] Dep. Muse, Pl.'s Ex. 37-32, 35:2-9; Dep. Forim, Defs.' Ex. 29-F, 86:11-17.

[35] Dep. Forim, Defs.' Ex. 29-F, 89:6-90:32.

[36] Dep. Reardon, Pl.'s Ex. 37-7, 135:21-136:1;  Dep. Mary Theresa Shore, Defs.' Ex. 29-H, 9:3-8 [#39-9].

[37] Dep. Reardon, Pl.'s Ex. 37-7, 136:18-22.

[38] Dep. Reardon, Pl.'s Ex. 37-7, 136:20-23.

[39] Dep. Reardon, Pl.'s Ex. 37-7, 136:23-137:1.

[40] Dep. Reardon, Pl.'s Ex. 37-7, 137:1, 21-22.

[41] E-mail, Pl.'s Ex. 37-36 [#37-4].

terminated.[42]

On June 2, Shepard was attending a conference in Spain.[43]  She first heard about the events of May 28 and Reardon's termination in two e-mails from Muse and Seluta sent to her after Reardon was fired.[44]  No one, including Seluta, spoke with Reardon before terminating Reardon's employment.[45]

B.     Procedural Background

On November 5, 2009, Reardon filed her Complaint [#1] in this case against MGH. Defendant MGH filed its Answer [#6] on January 15, 2010.  On August 4, 2010, the court issued an Order [#17] allowing Plaintiff's Motion to Amend the Complaint [#11].  Plaintiff filed her Amended Complaint [#20] against Defendants MGH, Shepard, and Seluta on August 20, 2010. Plaintiff brought six claims: (Count I) violation of the FLSA, 29 U.S.C. § 207 against MGH; (Count II) violation of the FLSA, 29 U.S.C. § 215(a)(3) against MGH; (Count III) violation of the Americans with Disabilities Act, 26 U.S.C. § 12111 against all Defendants; (Count IV) violation of Mass. Gen. Laws ch. 151B, §4(16) against all Defendants; (Count V) violation of the FMLA, 29 U.S.C. § 2601 against all Defendants; and (Count VI) retaliation for use of FMLA, 29 U.S.C. § 2601 against all Defendants.  On August 24, 2010, Defendants filed their Answer [#21].

Defendant Shepard filed a Motion for Summary Judgment [#27] for all claims asserted

_____

[42] Dep. Reardon, Pl.'s Ex. 37-7, 138:13-15; Notice of Termination, Pl.'s Ex. 37-37 [#37-4].

[43] Dep. Shepard, Defs.' Ex. 29-D, 145:24-146:5, 149:9-22, 165:21-166:10.

[44] Dep. Jo-Anne O. Shepard, Defs.' Ex. 29-D, 149:9-150:9, 153:14-24 [#29-5]; E-mail, Pl.'s Ex. 37-38 [#37-4]; Pl.'s Ex. 37-40 [#37-4].

[45] Dep. Shepard, Defs.' Ex. 29-D, 165:21-166:10.

against her on July 29, 2011.  On that same day, Defendants MGH and Seluta filed a <u>Motion for</u>

<u>Summary Judgment</u> [#30] on Counts II-VI of the <u>Amended Complaint</u>.  Reardon filed her

<u>Combined Opposition to Defendants' Motions for Partial Summary Judgment</u> [#34] on October

3, 2011.  Defendants filed replies [#41, 42] to Plaintiff's <u>Opposition</u> on October 24, 2011. The

court held a hearing on the motions for summary judgment on January 13, 2012, and the court

took the matter under advisement.

III.     <u>Analysis</u>[46]

   A.     <u>Standard for Summary Judgment</u>

   The function of a summary judgment motion is to pierce the formal allegations of the

pleadings and to determine whether further exploration of the facts is necessary.[47]  Pursuant to

Fed. R. Civ. P. 56(c), summary judgment shall only be granted "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law."  When called upon to

decide a motion for summary judgment, "'a court is not authorized to make findings of fact,' . . .

[and it] must examine the record 'in the light most favorable to, and drawing all reasonable

inferences in favor of, the nonmoving party.'"[48]

_____

   [46] There are two motions for summary judgment at issue here.  To avoid confusion, the
court will organize its analysis by the counts in the <u>Amended Complaint</u> and, when applicable,
separately discuss its analysis as it applies to each Defendant.

   [47] <u>Hahn v. Sargent</u>, 523 F.2d 461, 464 (1st Cir.1975).

   [48] <u>OneBeacon America Ins. Co. v. Commercial Union Assur. Co. of Canada</u>, 804 F. Supp.
2d 77, 85-87 (D. Mass. 2011) (Tauro, J.) (quoting <u>Ross v. Framingham Sch. Comm.</u>, 44 F. Supp.
2d 104, 113 (D. Mass. 1999); <u>de la Cruz v. El Conquistador Resort & Country Club</u>, 218 F.3d 1,
5 (1st Cir. 2000)).

On summary judgment, "evidence *from the moving party* as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment."[49]  Summary judgment is not automatically precluded when the moving party relies only on the testimony of interested parties.[50]  The court "need not exclude all interested testimony, specifically testimony that is uncontradicted by the nonmovant."[51]

In cases involving employment discrimination, where the employer as the moving party presents a legitimate, non-discriminatory reason for its action, "courts must be 'particularly cautious' about granting the employer's motion for summary judgment."[52]  If the non-moving party produces evidence that amounts to more than "'conclusory allegations, improbable inferences, and unsupported speculation,'" the court should typically refrain from granting summary judgment.[53]  The ultimate question for the court is whether a reasonable jury, based on the evidence put forth, could "find that the adverse action was taken because of the employee's protected conduct rather than because of other nondiscriminatory reasons[.]"[54]

B.      Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3)

29 U.S.C. § 215(a)(3) states that it is unlawful:

> to discharge or in any other manner discriminate against any

---

[49] <u>Statchen v. Palmer</u>, 623 F.3d 15, 18 (1st Cir. 2010).

[50] <u>See</u> <u>LeFrenier v. Kinirey</u>, 550 F.3d 166, 168 (1st Cir. 2008).

[51] <u>Dennis v. Osram Sylvania, Inc.</u>, 549 F.3d 851, 856 (1st Cir. 2008).

[52] <u>Hodgens v. Gen. Dynamics Corp</u>., 144 F.3d 151, 167 (1st Cir. 1998).

[53] <u>Id.</u> (quoting <u>Smith v. Stratus Computer, Inc.</u>, 40 F.3d 11, 12 (1st Cir. 1994).

[54] <u>Hodgens</u>, 144 F.3d at 168.

employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

The minimum elements of a retaliation claim under the FLSA are clear.  The Plaintiff must demonstrate that "(1) [s]he engaged in a statutorily protected activity, and (2) h[er] employer thereafter subjected h[er] to an adverse employment action (3) as a reprisal for having engaged in the protected activity."[55]  To satisfy the third element, "a plaintiff must proffer evidence from which a reasonable factfinder could infer that the employer retaliated against him for engaging in the protected activity."[56]  An employer may, however, terminate an employee's employment if it does so for legitimate reasons and not as a reprisal.[57]

Here, for the purposes of summary judgment, Defendant MGH does not dispute that Reardon satisfies the first element, that she engaged in statutorily protected activity.[58]  There is also no dispute that Reardon's employment was terminated, which satisfies the second element.  MGH does argue, however, that it "is entitled to summary judgment on this claim because Reardon has absolutely no evidence that she was terminated 'as a reprisal' for making her alleged complaints."[59]

---

[55] Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99, 1092 (1st Cir. 2004).

[56] Blackie v. Maine, 75 F.3d 716, 723 (1st Cir. 1996).

[57] Id.

[58] Mem. Law Supp. Mot. Summ. J. Defs. Massachusetts General Hospital and Mauren Seluta, at 6 n.7 [#31].

[59] Mem. Supp. Mot. Summ. J. Defs. Massachusetts General Hospital and Seluta, at 6.

The court makes no assumptions about the reason Defendant MGH terminated Reardon's employment. Nevertheless, a reasonable factfinder could infer from the facts in this case that MGH terminated Reardon's employment as a reprisal for Reardon's repeated complaints about being paid overtime. The record is replete with statements that Reardon complained to Seluta, Shepard, and Munhall about not being paid for all the hours that she worked. Reardon asserts that Seluta told her not to indicate on her time sheets that she worked more than forty hours a week and that Seluta was only going to pay her for forty hours of work a week.[60] Reardon also alleges that she told Seluta and Shepard that she thought MGH was violating the law by not paying her for all the hours she worked.[61]

Plaintiff's employment was terminated immediately after the Department's executive director, Palumbo, told Seluta to keep her on investigatory leave.[62] Her employment was also terminated without the knowledge of Shepard, her supervisor. In light of this information, a reasonable trier of facts could conclude that Defendant MGH's proffered decision for termination was not its true motivation. A reasonable trier of facts could infer that Reardon's repeated requests for full payment for hours worked under the law was the motivating reason for MGH's decision. Because this is a disputed issue of material fact, the court does not find Count II of the Amended Complaint ripe for summary judgment.

C.      Violation of the Americans with Disabilities Act ("ADA"), 26 U.S.C. § 12111

        1.      Defendants Shepard and Seluta

---

[60] Dep. Reardon, Pl.'s Ex. 37-7, 51:21-22.

[61] Dep. Reardon, Defs.' Ex. 29-A, 73:21:74:16.

[62] E-mail, Pl.'s Ex. 37-36; Notice of Termination, Pl.'s Ex. 37-37.

The First Circuit recently held that individual defendants are not liable under the ADA.[63]

Reardon concedes this point.[64]  The claim against Defendants Shepard and Seluta for violations of

the ADA is, therefore, dismissed.

## 2.    Defendant MGH

The court analyzes a violation of the ADA using the McDonnell Douglas burden-shifting

framework.[65]  Under this analysis, the plaintiff has the initial burden of establishing a prima facie

case of discrimination.[66]  If she does so, the burden shifts to the defendant to articulate "a

legitimate, non-discriminatory reason for its employment decision . . . ."[67]  If the defendant does

so, the burden shifts back to the plaintiff to provide evidence that the defendant's non-

discriminatory reason is pretext for discriminatory animus.[68]  In order to survive summary

judgment: "'The plaintiff does not have to prove by a preponderance of the additional evidence

that discrimination was in fact the motive for the action taken.  All a plaintiff has to do is raise a

genuine issue of fact as to whether discrimination motivated the adverse employment action.'"[69]

---

[63] Roman-Oliveras v. Puerto Rico Elec. Power Auth., 655 F.3d 43, 51-52 (1st Cir. 2011); Leonard v. Am. Med. Response, No. 09-10031-RGS, 2009 WL 1883725, at *2 (D. Mass. July 1, 2009).

[64] Pl.'s Combined Mem. Law Opp'n Defs.' Mots. Partial Summ. J., at 20 [#35].

[65] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973); Tobin v. Liberty Mut, Ins. Co., 433 F.3d 100, 104-05 (1st Cir. 2005).

[66] Tobin, 433 F.3d at 104.

[67] Id. at 105.

[68] Id.

[69] Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000) (quoting Olivera v. Nestle P. R., Inc., 922 F.2d 43, 50 (1st Cir. 1990)).

Here, for the purpose of summary judgment, Defendant MGH does not contest that Reardon can establish a prima facie case of disability discrimination.[70]  MGH has suggested that it terminated Reardon's employment because Reardon violated the confidentiality agreement she signed at the commencement of her employment by sharing her computer username and password with Muse.  Reardon does not contest that this is a legitimate, non-discriminatory reason for terminating her employment.  The only issue for the court to resolve, therefore, is whether Reardon has provided evidence that the reason MGH provides for her termination is actually pretext for discriminatory animus.

Examining the record in the light most favorable to Reardon, the court finds that Plaintiff does "raise a genuine issue of fact"[71] as to whether discrimination motivated MGH's decision. When Reardon was hospitalized in December 2007, she received an oral warning from her supervisor for not calling in to work on the days she spent as an in-patient at the hospital.[72] Reardon  provides evidence that Seluta reacted negatively when Reardon took leave time to care for her health in 2007.[73]  Reardon was approved for intermittent leave for the last time three weeks prior to the termination of her employment.  This information combined with the fact that Seluta and Shore did not adhere to Palumba's directive to keep Reardon out on investigatory leave, raises a genuine issue of fact as to whether the events surrounding Reardon's termination

---

[70] Mem. Supp. Mot. Summ. J. Defs. Massachusetts General Hospital and Seluta, at 9 n.9.

[71] Tobin, 433 F.3d at 105.

[72] Dep. Reardon, Pl.'s Ex. 37-7, 108:5-17.

[73] Dep. Reardon, Pl.'s Ex. 37-7, 92:1-17, 93:3-10.

on June 2, 2009 were actually pretext for discriminatory animus.[74]   For this reason, Defendant

MGH's <u>Motion for Summary Judgment</u> as to Reardon's claim for violation of the ADA is

DENIED.

      D.      <u>Violation of Mass. Gen. Laws ch. 151B, §4(16)</u>

         1.      <u>Defendants MGH and Seluta</u>

Section 4(16) of Mass. Gen. Laws ch. 151B makes it illegal to dismiss an employee

"because of his handicap . . . ."[75]  As with claims under the ADA, the court analyzes claims of

discrimination under ch.151B by applying the <u>McDonnell Douglas</u> burden-shifting framework.[76]

Unlike the ADA, individuals may be held liable under ch. 151B, §4(16).  As put forth above,

Seluta was the individual that terminated Reardon's employment at MGH.  Accordingly, for the

reasons stated above,[77] Defendants MGH and Seluta's <u>Motion for Summary Judgment</u> as to

Reardon's claim for violation of Mass. Gen. Laws ch. 151B, §4(16) is DENIED.

         2.      <u>Defendant Shepard</u>

In order for Shepard to be liable for violating ch. 151B, §4(16), she needed to participate

in the decision to terminate Reardon's employment.  Shepard states that she first learned about

Reardon's dismissal in an e-mail that Seluta sent to her on June 2, 2009, after Seluta and Shore

had already handed Reardon her notice of termination.  Shepard asserts that she played no role in

---

[74] E-mail, Pl.'s Ex. 37-36; Notice of Termination, Pl.'s Ex. 37-37.

[75] Mass. Gen. Laws ch. 151B, §4(16) (2011).

[76] <u>See</u> <u>Ward v. Mass. Health Research Inst., Inc.</u>, 209 F.3d 29, 33 n.2 (1st Cir. 2000); <u>Jones v. Nationwide Life Ins. Co.</u>, No. 20-cv-30216-MAP, 2012 WL 726675, at *3 (D. Mass. March 5, 2012).

[77] <u>See</u> <u>supra</u> Part III.C.2.

the decision to terminate Reardon's employment.[78]

Shepard received two e-mails in Spain on June 2, 2009. The first was from Muse, and the second was from Seluta.[79] Both e-mails are written as if Shepard did not previously know about the decision to terminate Reardon's employment. Seluta's e-mail informs Shepard that Reardon was fired for falsifying time sheets and providing someone with her computer username and password. It also states: "As soon as you get back, I will set up sometime [sic] with you and fill you in on the details."[80] There would be no need for Seluta to inform Shepard of the details leading up to Reardon's termination if Shepard took part in the termination. Additionally, Palumbo e-mailed Seluta, Shore, and Munhall instructing them to leave Reardon on investigatory leave. Palumbo did not include Shepard on that e-mail.

Reardon offers no affirmative evidence that Shepard participated in the decision to terminate her employment. Reardon has provided no evidence that Seluta, Shore, or anyone else actually contacted Shepard in Spain prior to Seluta and Shore terminating Reardon's employment. Reardon has not offered any evidence that Shepard even knew about the events of May 28, 2009 prior to receiving the e-mails from Seluta and Muse. The fact that Seluta and others could contact Shepard in Spain prior to June 2, does not demonstrate that they did. Reardon has failed to establish that Shepard participated in the decision to terminate her employment. Without any affirmative evidence to contradict it, the court relies on the testimony of Shepard.[81] The court

---

[78] Dep. Shepard, Defs.' Ex. 29-D, 150:3-9, 166:3-5.

[79] E-mail, Pl.'s Ex. 37-38; E-mail, Pl.'s Ex. 37-40.

[80] E-mail, Pl.'s Ex. 37-40.

[81] See Statchen, 623 F.3d at 18; Dennis, 549 F.3d at 856.

also relies on the reasonable interpretation of the e-mails to Shepard from Muse and Seluta. For this reason, Shepard's Motion for Summary Judgment as to Reardon's claim for violation of Mass. Gen. Laws ch. 151B, §4(16) is ALLOWED.

      E.      Violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et seq. (Count V) and Retaliation for Use of the FMLA, 29 U.S.C. § 2601, et seq. (Count VI)

Reardon brings separate claims under the FMLA for interference and retaliation. In the interference claim, she alleges:

> Defendant interfered with the Plaintiff's exercise of her rights under FMLA by, *inter alia*, complaining about her use of leave, assigning her more onerous duties than she had before claiming her rights under FMLA and, ultimately, dismissing her from the Hospital's employ for having exercised her rights under the statute.[82]

The First Circuit has recognized that regardless of how a plaintiff labels the FMLA claim, whether a claim is one of retaliation or interference "depend[s] on whether the plaintiff is, at bottom, claiming that the employer denied his or her substantive rights under the FMLA or that the employer retaliated against him or her for having exercised or attempted to exercise those rights."[83] When a claim is one of retaliation, as opposed to interference, the employer's motivation for the adverse employment action is relevant to the analysis,[84] and a modified version

---

[82] Am. Compl. ¶ 113 [#20].

[83] Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 332 (1st Cir. 2005).

[84] Mellen v. Trustees of Boston Univ., 504 F.3d 21, 26 (1st Cir. 2007).

of the <u>McDonnell Douglas</u> burden-shifting framework is applied.[85]

Under the modified <u>McDonnell Douglas</u> framework, the plaintiff must first make out a prima facie case of retaliation.  In order to do so, the "plaintiff must show (1) that [s]he engaged in a protected action . . . ; (2) that [s]he suffered an adverse employment action . . . ; and (3) that there was some possibility of a causal connection between the employee's protected activity and the employer's adverse employment action, in that the two were not wholly unrelated."[86]  If the plaintiff makes out a prima facie case, the defendant must articulate a legitimate, non-discriminatory reason for the action.[87]  If the defendant does so, the plaintiff has the "ultimate burden of showing that the employer's stated reason for terminating him was in fact a pretext for retaliating against him for having taken protected FMLA leave."[88]  To survive a motion for summary judgment, once the defendant has offered a legitimate, non-discriminatory reason, the plaintiff must provide enough evidence so that a reasonable factfinder could find that defendant's proffered reason is pretext for retaliation.[89]

Here, Reardon's claims under the FMLA must be analyzed as claims for retaliation, not interference, because Reardon does not allege that Defendants prevented or inhibited her from taking leave under the FMLA.[90]  What she does allege, rather, is that Defendants expressed

---

[85] <u>Colburn</u>, 429 F.3d at 335.

[86] <u>Id.</u> at 336 n.10.

[87] <u>Hodgens</u>, 144 F.3d at 160.

[88] <u>Id.</u>

[89] <u>Id.</u> at 168.

[90] Dep. Reardon, Pl.'s Ex. 37-7, 82:6-11.

annoyance with her, assigned her additional work, and eventually fired her in retaliation for taking leave under the FMLA.

       1.     <u>Comments Made To Reardon and Additional Work Assigned to Reardon</u>

The FMLA prohibits employers from taking adverse actions against employees who use FMLA leave.  This does not mean, however, that "every comment about problems created by the use of leave can fairly be treated as an adverse employment action violating the FMLA."[91]  The FMLA prohibits actions, not comments.[92]

Here, Reardon asserts that Shepard and Seluta expressed displeasure when she informed them that she would be taking time off.[93]  At one point, Seluta even told Reardon to "get out."[94] These statements, in an of themselves, do not constitute adverse employment actions.[95]  They show that Shepard and Seluta were annoyed, but this is not enough to constitute retaliation under the FMLA without evidence that actual adverse actions were taken.[96]

Reardon also asserts that Shepard assigned her additional work after she returned from leave and that this constitutes retaliation.[97]  Additional work, in this context, does not constitute an adverse employment action.  Reardon offers no evidence to suggest that Shepard asked her to

---

[91] <u>Keeler v. Putnam Fiduciary Trust Co.</u>, 238 F.3d 5, 10 (1st Cir. 2001).

[92] <u>Id.</u>

[93] Dep. Reardon, Pl.'s Ex. 37-7, 84:12-85:10.

[94] Dep. Reardon, Pl.'s Ex. 37-7, 92:1-17.

[95] <u>See</u>  <u>Keeler</u>, 238 F.3d at 10.

[96] <u>Id.</u>

[97] Dep. Reardon, Pl.'s Ex. 37-7, 86:14-87:12.

perform work that was outside of her normal responsibilities.[98]  Without affirmative evidence that

the additional work was not part of Reardon's already assumed responsibilities as an

administrative assistant, there is no basis for concluding that the assignment of this work

constituted an adverse employment action.

The statements made by Seluta and Shepard and the additional work assigned by Shepard,

therefore, do not constitute adverse employment actions under the FMLA.  Defendants motions

for summary judgment as to Reardon's claims of violations of the FMLA and retaliation for use of

the FMLA as they apply to these actions are ALLOWED.

### 2.    Termination of Employment

Defendants do not contest that Plaintiff established a prima facie case of retaliation.

Defendants provide a legitimate, non-discriminatory reason for terminating Reardon's

employment–Reardon's violation of the confidentiality agreement.  The burden is, therefore, upon

Reardon to demonstrate that Defendants' legitimate, non-discriminatory reason is pretext for

retaliation under the FMLA.[99]

Plaintiff has provided no affirmative evidence demonstrating that Shepard participated in

the decision to terminate her employment.[100]  For this reason, Shepard's motion for summary

---

[98]  See Morales-Vallellanes v. Potter,  605 F.3d 27, 38 (1st Cir. 2011) (finding, in a Title
VII case, that having an employee perform less desirable duties that were within his job
description did not constitute an adverse employment action); Marrero v. Goya of P.R., Inc.,  304
F.3d 7, 23 (1st Cir. 2002) (finding that a transfer to a different department that increased
employee's workload did not constitute an adverse employment action under Title VII because
the employee continued to work in the same position, as a secretary, for the same pay).

[99]  Hodgens, 144 F.3d at 160.

[100]  See supra Part III.D.2.

judgment as to Reardon's claim of violations of the FMLA and retaliation for use of the FMLA as it applies to the termination of her employment is ALLOWED.

Reardon has, however, provided enough information for a reasonable factfinder to determine that Defendants MGH and Seluta's stated legitimate, non-discriminatory reason for the termination of Reardon's employment is pretext for retaliation.  The evidence demonstrates that Seluta was unhappy when Reardon took leave under the FMLA.[101]  Seluta even told Reardon, at one point, to "get out," which could be interpreted to as a desire for Reardon to get out of the Department.[102]  Although Seluta's statements alone do not constitute adverse employment actions, they do support the contention that Seluta may have retaliated against Reardon by terminating her employment for taking leave.  Reardon's final request for leave under the FMLA was approved three weeks prior to her dismissal.  Seluta terminated Reardon's employment shorly after Palumbo informed Seluta that she should keep Reardon on investigatory leave.  The combination of these facts is enough for Reardon to survive summary judgment because a reasonable factfinder could find that Defendants Seluta and MGH's legitimate, non-discriminatory reason is pretext.  Defendants MGH and Seluta's motion for summary judgment as to Reardon's claim of violations of the FMLA and retaliation for use of the FMLA as it applies to the termination of Reardon's employment is DENIED.

IV.     Conclusion

For the foregoing reasons, the Motion for Summary Judgment of Defendant Jo-Anne Shepard [#27] is ALLOWED.  The Motion for Summary Judgment of Defendants Massachusetts

---

[101] Dep. Reardon, Pl.'s Ex. 37-7, 84:12-85:10.

[102] Dep. Reardon, Pl.'s Ex. 37-7, 92:1-17.

General Hospital and Maureen Seluta [#30] is ALLOWED in part and DENIED in part as follows: MGH's motion for summary judgment on Count II of the Amended Complaint [#20], violation of the FLSA, is DENIED; MGH and Seluta's motion for summary judgment on Count III, violation of the ADA, is DENIED as it applies to MGH and ALLOWED as it applies to Seluta; MGH and Seluta's motion for summary judgment on Count IV, violation of Mass. Gen. Laws ch. 151B, §4(16) is DENIED; MGH and Seluta's motion for summary judgment on Count V, violations of FMLA, and Count VI, retaliation for use of FMLA, is ALLOWED as regards comments made by Seluta to Reardon, and is DENIED as regards the termination of Reardon's employment.

The following counts still remain: Count I, violation of the FLSA, overtime pay, against MGH; Count II, violation of the FLSA, retaliation, against MGH; Count III, violation of the ADA, against MGH; Count IV, violation of Mass. Gen. Laws ch. 151B, §4(16), against MGH and Seluta; Counts V and VI, violation of and retaliation for use of the FMLA, against MGH and Seluta, as regards the termination of Reardon's employment

AN ORDER HAS ISSUED.

                                              ____ /s/ Joseph L. Tauro____
                                              United States District Judge